UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

STEPHAINE J. RICKS                                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 3:17-CV-634-DW

COMMISSIONER OF SOCIAL SECURITY                                      DEFENDANT

## MEMORANDUM OPINION

Plaintiff Stephaine J. Ricks has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain

judicial review of a final decision of the Commissioner of Social Security that denied his

application for disability insurance benefits (DIB). Ricks applied for DIB and SSI on January

21, 2014, alleging that he was disabled as of June 1, 2011, due to gout, polyneuropathy,

degenerative joint disease of the hip, degenerative disc disease and PTSD (Tr.23 ). The

Commissioner denied Rick's claims on initial consideration (Tr.98-101) and on reconsideration

(Tr. 103-09). Ricks requested a hearing before an Administrative Law Judge (ALJ) (Tr. 110-

111).

ALJ John R. Price conducted a hearing in Louisville, Kentucky, on March 23, 2016

(Tr.36-65). Ricks attended with his representative Kirsten Brown (Tr. 36). Ricks and vocational

expert (VE) Linda Jones testified at the hearing (Tr. 40-58, 59-65). Following the conclusion of

the hearing, ALJ Price entered a hearing decision on May 24, 2106 that found Ricks is not

disabled for the purposes of the Social Security Act (Tr.21-31).

In his adverse decision, ALJ Price made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act
        through December 31, 2016.

2.      The claimant has not engaged in substantial gainful activity since June 1, 2011,
        the alleged onset date (20 C.F.R. 404.1571, *et seq.*).

3.	The claimant has the following severe impairments: gout, polyneuropathy, degenerative joint disease of the hip, degenerative disc disease and PTSD (20 C.F.R. 404.1520(c)).

4.	The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

5.	After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally bend, stoop, kneel, crouch, and crawl, but should not climb ladders, ropes, or scaffolds. He should not work around hazards such as unprotected heights. He can perform simple 1-2 step tasks with little-to-no change in work routine from day-to-day. He can have occasional superficial interaction with co-workers and supervisors, but no contact with the public.

6.	The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7.	The claimant was born on May 24, 1967, and was 44-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8.	The claimant has at least a high-school education and is able to communicate in English (20 C.F.R. 404.1564).

9.	Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, App. 2).

10.	Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a)).

11.	The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2011, through the date of this decision (20 C.F.R. 404.1520(g)).

(Tr.21-31). Ricks sought review of the hearing decision by the Appeals Council (Tr. 17). The Appeals Council denied his request for review, finding no reason under the Rules to review ALJ Price's decision (Tr.1-6). The present lawsuit followed.

**The Five-Step Sequential Evaluation Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See, 20 CFR §§ 404.1505(a)(4), 416.905(a).  To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 CFR §§ 404.1520, 916.920(a).  *Miller v. Commissioner*, 811 F.3d 825, 834 n. 6 (6th Cir. 2016)(" The ALJ must engage in a five-step sequential evaluation process to determine whether a claimant is disabled.").  At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled.  See, 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971.  *See, Gayhaeart v. Commissioner,* 710 F.3d 365, 374-75 (6th Cir. 2013)( "If claimant is doing substantial gainful activity, he is not disabled."); *Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities.  See 20 CFR §§ 404.1520(a)(4)(ii),  416.920(a)(4)(ii). *Gayheart,* 710 F.3d at 374("If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.").  If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See, Rabbers v. Commissioner,*  582 F.3d 647, 652 (6th Cir. 2009); *Higgs v. Bowen*, 880 F.2d

960, 962 (6th Cir. 1988); *Gray v. Astrue,* 780 F. Supp.2d. 548, 550 (E.D. Ky. 2011)(" If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments—i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.")

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart P of Part 404 of the federal regulations. 20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii); *Rabbers*, 582 F.3d at 652. The claimant will be determined to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. *See*, *Combs v. Commissioner*, 459 F.3d 640, 642 (6th Cir. 2006)("Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed."); *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991)(same).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See, Wilson v. Commissioner,* 378 F.3d 541, 458 (6th Cir. 2004); *Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989). A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3). *Mackins v. Astrue*, 655 F. Supp.2d 770, 776 (W.D. Ky. 2009)(" The claimant must not be able to perform his past

relevant work either as he actually performed it or as it generally performed in the national economy.").

The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who cannot return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience. See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Hensley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Cruse v. Commissioner*, 502 F.3d 532, 539 (6th Cir. 2007); *Wilson v. Commissioner*, 378 F.3d 541, 458 (6th Cir. 2004)(" If the claimant does . . . [satisfy the initial 4-steps], including establishing that under the claimant's "residual functional capacity the claimant can [not] perform his past relevant work," the burden then shifts to the Commissioner [at step 5] to show that "based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.") . Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

**Standard of Review.**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g). The statute, and case law that interprets it, require a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011)("[R]eview is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.'); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.); *Dennis v. Astrue*, 655 F. Supp.2d 746, 749-50 (W.D. Ky. 2009)(same).

Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir.2009); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)(same). *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*). It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th. Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir.2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)); *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

## Issues for Review

Plaintiff in his Fact & Law Summary raises two issues. First, he contends that ALJ Price in his hearing decision at page 8 failed to properly assess the weight to be given to the opinion of consultative medical examiner, Dr. Curtis Gale-Dyer, who examined the Plaintiff on March 18, 2014 (TR 575-78). The ALJ in his decision stated only that, "As for the opinion evidence, Dr. Curtis Gale-Dyer is afforded weight for his findings that the claimant has few limitations aside from posturals based on his examination." (TR 28). Other than this single comment, the ALJ in finding that Ricks retained the residual functional capacity (RFC) to perform a limited range of light work noted only that Dr. Gale-Dyer had found Ricks to have a full range of motion and had determined that the use of an assistive device was unnecessary. (TR 28-29).

Plaintiff maintains that the ALJ violated his "absolute obligation" to explain in sufficient detail to permit meaningful judicial review why the remaining significant limitations imposed by Dr. Gale-Dyer were excluded contrary to *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). Specifically, Plaintiff focuses on that portion of the doctor's consultative examination report (TR 575-579) in which he restricted Ricks from any type of activity that required Ricks to bend or stoop. Plaintiff points out that such a restriction, as acknowledged by the vocational expert in her testimony, would have precluded all substantial gainful activity. (TR 62). Plaintiff adds that Social Security Ruling (SSI) 96-9p likewise recognizes that "a complete inability to stoop would significantly erode the unskilled sedentary occupational base in a finding that the individual is disabled should usually apply . . . ." (DN 13, p. 7, n.1). Thus, the failure of ALJ Price to mention this critical restriction imposed by Dr. Gale-Dyer, much less to discuss why he rejected it, mandates a reversal of the Commissioner's decision and remand for further proceedings.

Plaintiff then continues to point out that Dr. Gale-Dyer in his consultative examination report also restricted him from: any type of heavy lifting; work activities that would require him to reach above his head or beyond his body space; prolonged walking or walking without frequent breaks due to flat feet; and, working without ready access to a restroom in the workplace due to his diagnosis of diverticulitis. (TR 578). Because the performance of light work as defined by 20 C.F.R. 404.1567(b) requires a claimant to be able to routinely perform "a good deal of walking or standing," up to 6 hours in an 8-hour day, this restriction by Dr. Gale-Dyer, if adopted by the ALJ, likewise would have precluded Plaintiff from the performance of light work. Plaintiff protests once again that ALJ Price simply never explained why he rejected this controlling limitation.

Plaintiff argues that all of these important restrictions imposed by Dr. Gale-Dyer also should have been discussed in meaningful detail in the RFC portion of the hearing decision of ALJ Price. Yet, the ALJ, at most, simply made a single, cryptic reference to the opinion of the Doctor with the use of the unadorned word "weight," an unaccompanied term that in the Plaintiff's mind is "hopelessly vague and incapable of meaningful judicial review," contrary to *Varner v. Astrue*, No, 3:09-CV-1026-J-TEM, (M.D. Fla. Mar. 29, 2011) (term "appropriate weight" given without explanation to the opinion evidence of two doctors by the ALJ was insufficiently specific to satisfy the requirement that the ALJ "must state with particularity the weight given to the opinion of the medical opinion evidence.") (Citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Accordingly, Plaintiff concludes that the Commissioner failed to carry her burden at step 5 of the sequential evaluation process to show by substantial evidence that he remained capable given his age, education and limitations to perform the alternative light work identified by vocational expert Linda Jones.

Plaintiff in his second argument focuses upon the credibility finding of ALJ Price. While he acknowledges that courts are reluctant to upend the credibility findings of the ALJ, Plaintiff maintains that ALJ Price in his hearing decision failed to acknowledge the Plaintiff's exemplary work history. Plaintiff points out that for over 23 years he served in the U.S. Army from 1987 until his honorable discharge in 2011 with the rank of Master Sergeant. (TR 176-77). Such an unblemished work history, according to the Plaintiff, should have been taken into consideration in support of the credibility of Plaintiff's testimony. *See White v. Comm'r of Soc. Sec.,* 312 Fed Appx 779, 789 (6th Cir. Feb. 24, 2009).

Plaintiff does not suggest that this work history necessarily "trumps" the other factors cited by the ALJ in his hearing decision, but only that the ALJ was required to consider such work history and did not. If no or little work history can support an adverse credibility finding, then an unblemished, lengthy work history should have at a minimum been considered to support the credibility of the Plaintiff. Because ALJ Price apparently did not consider Plaintiff's work history before rejecting his credibility, Plaintiff maintains that the "error can only be remedied by remand." (DN 13, p. 12).

<u>Legal Analysis</u>

<u>Medical Opinion Evidence</u>

We begin with Plaintiff's opposition to the RFC finding of ALJ Price, which Plaintiff challenges based upon the consultative examination results obtained by Dr. Gale-Dyer. (TR 575-579). As noted, Plaintiff insists that proper evaluation of the weight of Dr. Gale-Dyer's medical opinion by the ALJ would have precluded the RFC finding in Finding of Fact No 5 that he remained capable of performing a limited range of light work. Plaintiff insists that his inability to stoop or bend, combined with the severe limitations upon his ability to walk, both of

which were determined by Dr. Gale-Dyer, would have precluded all work even that performed at the sedentary level. He faults the ALJ for stating in the hearing decision only that he "afforded weight" to the findings of the doctor that Plaintiff had few limitations other than postural limitations based on the doctor's examination. (TR 28).

We cannot agree with the Plaintiff in this regard. The hearing decision of ALJ Price is not contrary to law and is substantially distinguishable from judicial decisions such as *Varner v. Astrue*, No. 3:09–cv–1026–J–TEM, 2011 WL 1196422 (M.D. Fla. Mar. 29, 2011) wherein the federal court determined that the ALJ involved improperly relied on the term "appropriate weight" without providing the reviewing court sufficient basis on which to determine the reasons of the ALJ for rejecting the fibromyalgia-related limitations imposed by the claimant Varner's two treating physicians.

The problem in *Varner*, as later decisions would explain, was that the reviewing federal court was left merely to guess on the factual basis on which the ALJ discounted the opinions of the claimant's physicians. *Johnson v. Barnhart*, 138 Fed. Appx. 266, 269 (11th Cir.2005) ("The ALJ's decision to give the opinions of Drs. Anders, Barber, and Martinez "appropriate weight" . . . is essentially meaningless because it provides no basis for the court to determine the weight the ALJ actually assigned to the opinions.")(citing *Lapoe v. Colvin,* 2013 WL 1149271 at *12 (M.D. Fla. Mar.19, 2013) (finding "appropriate weight" is ambiguous and insufficient to guide court in substantial evidence review)); *Wyan v. Comm'r of Soc. Sec.,* No. 6:14-CV-29-ORL-GJK, 2015 WL 5081427, at *2 (M.D. Fla. Aug. 27, 2015) ("Assigning "appropriate weight" to a medical opinion is essentially meaningless because it places the Court in the improper position of having to infer what weight the ALJ assigned to the physician's opinions."); *Lotts v. Colvin*, No. 5:13CV00071, 2014 WL 3809875, at *8 (W.D. Va. Aug. 1, 2014) ("The ALJ's announcement

that he gave Perkins's opinion "appropriate weight" leaves the Court guessing as to how much weight the ALJ thought was appropriate."); *Reynolds v. Comm'r of Soc. Sec.*, No. 6:10-CV-1682-ORL-GJK, 2012 WL 682462, at *11 (M.D. Fla. Mar. 2, 2012)("The Court agrees entirely with the reasoning in *Varner*, and finds that the ALJ's statement that the opinions were given appropriate weight is essentially meaningless because it places the Court in the position of having to infer what weight the ALJ assigned to the opinions. Thus, the Court finds that the ALJ erred by failing to state with particularity the weight which was given to the opinions of Drs. Rhodes and Carratt.").

Here, no guesswork is required for the Court to assess the weight that ALJ Price afforded the opinions of Dr. Gale-Dyer concerning the inability of Ricks to bend or stoop and walk for prolonged periods of time (TR 578). ALJ Price obviously gave these opinions no weight and for very good reason. First, the face of Dr. Gale-Dyer's own consultative examination report entirely contradicts both opinions. Physical examination of Ricks by the doctor revealed that Ricks had a full range of motion in all of his joints without any joint deformity, redness or tenderness, clubbing, edema or cyanosis. (TR 576-77).

Likewise, physical examination by Dr. Gale-Dyer further revealed that Ricks exhibited a full range of motion in his neck and lumbar spine with no evidence of paraspinal muscle spasm on palpation, no evidence of scoliosis and no pain on straight leg raising. (Id.) His gait was described as being both normal and stable; and, the doctor noted that Ricks was able to ambulate without a cane. (Id). Ricks during the examination also exhibited 5/5 strength in all of his major muscle groups in both the upper and lower extremities. (Id.) He was noted to be able to toe and heel walk, perform a full knee squat, mount and dismount the examination table without

difficulty, and exhibited normal deep tendon reflexes throughout, as well. (TR 577-578). These examination results are entirely contrary to the severe limitations imposed by Dr. Gale-Dyer.

Further, the medical records reveal no ongoing history of any significant treatment for Ricks' complaints of lower back pain. Indeed, the medical records contain no diagnostic imaging of the lumbar spine that would objectively support his subjective complaints of chronic low back pain. Ricks was never recommended for surgery or any other form of invasive treatment for his complaints of back pain. He was never prescribed a TENS unit nor did he receive epidural injections or physical therapy for low back pain. As ALJ Price correctly noted at page 8 of his hearing decision, "There is no evidence to point to a back problem, nor is there any treatment for this condition." (TR 28). Accordingly, neither the consultative medical examination results nor Ricks' medical history provided any support for the type of extraordinarily severe limitations contained in the discussion section of Dr. Gale-Dyer's report (TR 570).

If any minimal doubt remained as to the basis on which ALJ Price rejected the opinions of Dr. Gale-Dyer, then the opinions of the two state agency reviewing physicians, put such hypothetical doubt completely to rest. The state agency reviewers gave the opinion of Dr. Gale-Dyer little weight for the same reasons discussed above – – it was unsupported by the medical evidence of record or the examination performed by the doctor. (TR 87, 91). In the words of Dr. Jack Reed, M.D., "the opinion [of Dr. Gale-Dyer] relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." (TR 91).

ALJ Price in his thorough, detailed hearing decision appropriately relied on the totality of the medical evidence, as well as, the opinions of the state agency reviewing physicians to find in

finding of fact No 5 that the Plaintiff remained capable of performing a limited range of light work, an RFC finding amply supported by substantial evidence.[1]  Accordingly, we reject the Plaintiffs initial argument. *See, Griffith v. Astrue*, No. 3:12-CV-247-J-MCR, 2013 WL 525218, at *6–7 (M.D. Fla. Feb. 11, 2013)(rejecting *Varner* where review of the hearing decision revealed that the ALJ properly gave the affected medical opinion no weight for numerous reasons).

## The Credibility Determination

ALJ Price at page 7 of his hearing decision found that "the claimant's statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (TR 27).  In other words, the ALJ determined that Ricks' statements concerning his subjective complaints and limitations were not fully credible.  In arriving at this conclusion, ALJ Price relied upon a detailed review of the medical evidence, the Plaintiff's testimony, his activities of daily living, his subjective complaints, his medical history, and other factors such as third-party reports (TR 26-29).  Plaintiff now insists that this credibility finding runs afoul of 20 CFR 404.1529(c)(3), SSR 16-3p, and its predecessor SSR 96-7p, because the ALJ failed to take into account Ricks' 23 year history of Army employment.

An administrative law judge properly may consider the credibility of a claimant when evaluating the claimant's subjective complaints, and the federal courts will accord "great deference to that credibility determination."  *Warner v. Comm'r*, 375 F.3d 387, 392 (6th Cir.

---

[1] We also note anecdotally in this regard that the Plaintiff by his own statements to various medical providers indicated that he continued to ride horses regularly for years after the alleged onset date of his disability on June 1, 2011.  A man who supposedly could never stoop or bend could hardly be expected to saddle, mount and ride a horse in parades regularly, as Ricks repeatedly told his medical providers he did.  (TR 370, 439, 478, 494, 516, 531, 600).  Thus, even common sense weighs heavily in favor of the decision of the ALJ to afford no weight to Dr Gale-Dyer's medical opinion that Ricks could not stoop or bend.

2004). The findings of the ALJ in this regard are repeatedly held in the Sixth Circuit to be accorded great weight, and judicial deference will be given to the ability of the ALJ to observe the demeanor and credibility of the witnesses. *Walters v. Comm'r*, 127 F.2d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y*, 818 F.2d 461, 463 (6th Cir. 1987)). Yet, the ALJ is not accorded absolute deference. His or her assessment of a claimant's credibility must be supported by substantial evidence. *Beavers v. Sec'y*, 577 F.2d 383, 386-87 (6th Cir. 1978).

When the ALJ "finds contradictions among the medical reports, claimant's testimony and other evidence," the ALJ may properly discount the credibility of the claimant. *Winning v. Comm'r*, 661 F. Supp.2d 807, 822 (N.D. Ohio 2009) (citing *Walters*, 127 F.3d 525, 531 (6th Cir. 1997)). The ALJ, however, is not permitted to render a credibility determination based solely upon a hunch, or "intangible or intuitive notion about an individual's credibility." Id. (citing Rogers, 486 F.3d at 247) (citing SSR 96-7p, [now SSR 16-3p])). Under SSR 16-3p, the ALJ must in the hearing decision set forth specific reasons for the credibility determination sufficient to make clear to the claimant and subsequent reviewers the weight that the ALJ gave to the claimant's statements and the reasons for such weight. *Winning*, 661 F. Supp.2d at 823. A mere blanket assertion that a claimant is not believable will not be sufficient under SSR 16-3p. *Id*. (citing *Rogers*, 486 F.3d at 248).

An assessment of the claimant's credibility must be based on a consideration of all the evidence of record. It should include consideration of not only the objective medical evidence but the aforementioned factors of: (1) the daily activities of the claimant; (2) the location, duration, frequency, and intensity of the claimant's symptoms including pain; (3) any factors that precipitate or aggravate the symptoms; (4) the dosage, type, effectiveness and side effects of any medication taken to alleviate such symptoms or pain; (5) treatment that the

claimant has received for relief of his or her symptoms; (6) any measures other than treatment that the claimant uses to relieve his or her symptoms; and (7) any other factors relating to the functional limitations and restrictions of the claimant due to such symptoms or pain. Id. at 823 n. 14 (citing SSR 96-7p [now SSR 16-3p]).

Also included among the evidence that the ALJ must consider when making a credibility determination are the medical signs and laboratory findings of record, the diagnosis, prognosis and medical opinions provided by any treating physicians or other medical sources, and any statements or reports from the claimant, physicians or other persons about the claimant's medical history, treatment, response to treatment, prior work record, daily activities and other information related to the symptoms of the claimant and how such symptoms affect his or her ability to work. *Id*.

When the record establishes consistency between the subjective complaints of the claimant and the other evidence of record, such consistency will tend to support the credibility of claimant, while in contrast, any inconsistency in this regard will tend to have the opposite effect. *Winning,* 661 F. Supp.2d at 823. The reviewing court does not make its own credibility determinations. *Franson v. Comm'r,* 556 F. Supp.2d 716, 726-27 (W.D. Mich. 2008) (citing Walters, 127 F.3d at 528)). The federal courts will not substitute their own credibility determination for that of the ALJ as the fundamental task of the Commissioner is to "resolve conflicts in the evidence and to decide questions of credibility." *Rineholt v. Astrue*, 617 F. Supp.2d 733, 742 (E.D. Tenn. 2009) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)). Given the substantial deference accorded the credibility determination of the Commissioner, "'claimants challenging the ALJ's credibility determination face an uphill

battle.' " *Franson*, 556 F. Supp.2d at 726-27 (citing *Daniels v. Comm'r*, 152 Fed. Appx. 485, 488 (6th Cir. 2005)).

Plaintiff has not won this uphill battle in his challenge to the credibility finding of ALJ Price. It is certainly true that the work history of a claimant is one of many factors that the ALJ should consider in making a credibility determination. 20 C.F.R. § 404.1529(c)(3) (Fact-finder "will consider all of the evidence presented, including information about your prior work record."); *Wilcoxson v. Comm'r of Soc. Sec.*, No. 1:14-CV-1007, 2016 WL 878036 at *(W.D. Mich. Mar. 8, 2016) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (17-year work history was an additional factor supporting the credibility of the claimant)). *See also White v. Commissioner*, 572 F.3d 2727, 287 (6th Cir.2009) (same).

In this instance, there is no indication that ALJ Price was not fully aware of Ricks' military career in evaluating his credibility as a claimant seeking DIB. To the contrary, the hearing decision of the ALJ at page 7 specifically refers to the Plaintiff as being a "48 year-old former member of the military who . . . . left the military in 2011, when he said he could no longer keep up with the other soldiers."(TR 27).

Further, the evidence discussed by ALJ Price in his hearing decision overwhelmingly supports his credibility determination. For example, the ALJ pointed out that Ricks was noted to have no problem with his activities of daily living in December 2011 six months after the alleged onset date of disability (TR 494). As noted, Ricks repeatedly reported to various medical service providers that he wrote horses, despite having testified that he had not ridden his horse since 2011. (TR 25, 28, 353, 370, 439, 478, 494, 516, 531, 600). Indeed, Ricks was described as being "very active physically." (TR 28). ALJ Price understandably found such activities to be

inconsistent with Ricks' claim that he needed a cane to walk and could only stand for five minutes at a time (Id.).

It is clear to the Court that the ALJ carefully considered Ricks' allegations of pain, his medication usage, his treatment history, his examination results, his subjective complaints, his employment history, third-party reports, and his daily activities in arriving at the adverse credibility determination of the hearing decision. (TR 23-24, 27-28, 29, 208, 386, 456-57). We accordingly see no indication that the ALJ in his credibility determination violated either 20 C.F.R. § 404.1529(c)(3) or SSR 16-3p. Substantial evidence fully supports the hearing decision in this respect.

## Step 5 of the Sequential Evaluation

The only remaining question given the above analysis is whether the ultimate decision of the Commissioner is supported at step five of the sequential evaluation process. The testimony of a vocational expert may be substantial evidence to support a decision of the ALJ if that testimony is made in response to a hypothetical question that accurately portrays the mental and physical impairments of the claimant. *Ealy,* 594 F.3d at 512-13 (citing *Varley v. Sec'y,* 820 F.2d 777, 779 (6th Cir. 1987)). The hypothetical question to the VE is not required to include a list of the claimant's medical conditions. *Wadd v. Comm'r,* 368 F.3d 629, 632-33 (6th Cir. 2004). The ALJ may present a hypothetical to the VE on the basis of the ALJ's assessment of the claimant's credibility. *Jones v. Comm'r,* 336 F.3d 469, 475-76 (6th Cir. 2003) (citing *Townsend v. Sec'y,* 762 F.2d 40, 44 (6th Cir. 1985)). The hypothetical question need not incorporate those limitations asserted by the claimant that are properly rejected by the ALJ based upon his independent review of the record. *Foster v. Halter,* 279 F.3d 348, 356-57 (6th Cir. 2001).

During the hearing held on March 23, 2016 (TR 36-65), ALJ Price presented vocational expert, Linda Jones, with a hypothetical question that accurately portrayed the Plaintiff's limitations, both the mental and the physical. (TR 60-61). Based on such a hypothetical, VE Jones concluded that Ricks would not be able to perform his past relevant work, but remained capable of performing alternative light work with the limitations imposed by the hypothetical in jobs such as mail clerk, hand packager, stock clerk and retail trademarker (TR 60). Given a second hypothetical with the additional limitation of a need for close proximity to restroom facilities, VE Jones testified that Riggs still would remain capable of performing the mail clerk job and other alternative employment such as courier and messenger (TR 60-61). This testimony constitutes substantial evidence at step 5 of the sequential evaluation process to support the adverse decision of the Commissioner. Accordingly, a separate judgment shall be entered by the Court that affirms the decision of the Commissioner and dismisses the complaint with prejudice.

Cc:     counsel of record